UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **PAUL M. KERINS,** **Plaintiff** | : | |
| **v.** | : | **C.A. No. 04-215** ML |
| **GREENWICH MORTGAGE CORPORATION, and NEIL SAUNDERS, individually and derivatively d/b/a GREENWICH MORTGAGE CORPORATION,** **Defendants** | : | |

## MOTION FOR RULE 37(c), RULE 16 (f), AND FAILURE TO ACT IN GOOD FAITH SANCTIONS

Now comes the Plaintiff in the above cited matter, pursuant to Rule 37 (c), Rule 16 (f) of the Federal Rules of Civil Procedure and this Court's inherent powers, and hereby moves this Honorable Court for an Order imposing sanctions on Defendants for their untimely, misleading, incomplete, and inaccurate answers to Plaintiff's Request for Production Document questions12, 13, 14 and 18. In support thereof, Plaintiff relies on this memorandum of law filed simultaneously herewith.

**WHEREFORE**, Plaintiff prays this Motion be granted.

**PLAINTIFF,**
**SINAPI, FORMISANO & COMPANY, LTD.**
**Paul M. Kerins**
By his attorneys,

**Gregory A. Mancini (# 5740)**
100 Midway Place, Suite 1
Cranston, RI 02920-5707
Phone: (401) 944-9690
Facsimile: (401) 943-9040

**Dated: September 13, 2005**

**CERTIFICATION**

**TO: James Kelleher, Esq.**
**946 Centerville Road**
**Warwick, RI 02886**

I hereby certify that a true copy of this Motion and Memorandum of Law was mailed to the above named on this 13 day of **September, 2005**.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PAUL M. KERINS,** Plaintiff | : | |
| **v.** | : | **C.A. No. 04-215** |
| **GREENWICH MORTGAGE CORPORATION, and NEIL SAUNDERS, individually and derivatively d/b/a GREENWICH MORTGAGE CORPORATION,** Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RULE 37 AND RULE 16 SANCTIONS AND FAILURE TO ACT IN GOOD FAITH SANCTIONS**

## I. Introduction

This memorandum of law is in support of Plaintiff's motion for sanctions pursuant to Rule 37 (c) and Rule 16 (f) of the Federal Rules of Civil Procedure and this Honorable Court's inherent powers that stems from Defendants' Greenwich Mortgage Corporation, a licensed mortgage broker pursuant to R.I. Gen. Law § 19-14-1 *et seq.*, and Neil Saunders failure to provide complete responses, and for their contradictory, and untimely responses to Plaintiff's discovery requests in a pending civil action brought by Plaintiff Paul Kerins, a former loan officer and employee of Defendants, for unlawful failure to pay minimum wages and overtime compensation owed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Rhode Island Minimum Wage Act ("RIMWA"), R.I.G.L. §28-12-1, *et seq.*; for common law breach of contract for failure to pay Plaintiff his duly earned commissions; and various violations of several provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001-1461 ("ERISA").

## II. Discovery Obligations Under the Federal Rules of Civil Procedure

Failure to disclose or supplement requested information required by the rules of discovery without substantial justification requires sanctions under Rule 37 (c). FED. R. CIV. P. Rule 37 (c). *See*, *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir. 2001); *Biltrite Corporation v. World Road Markings, Inc.*, 202 F.RD. 359, 363 (D. Mass. 2001)(Sanctions for "false and misleading" information included allowing the disclosures to be introduced at trial; payment to the Registry of the Court; and plaintiff's reasonable expenses, including attorneys' fees, that were caused by defendant's actions). Included in any responses is an implicit obligation to act in good faith. *See*, *Pan American Grain Manufacturing Co. Inc. v. Puerto Rico Ports Authority*; CCC, 295 F.3D 108, 53 Fed. R.Serv.3d 593, 2002 A.M.C. 1988 (1st Cir. 2002)(The court has implicit powers to sanction a party for various acts of bad faith in discovery that caused unnecessary time, efforts, and resources.). This obligation extends to court annexed alternative resolution programs the parties enter into pursuant to their Rule 16 Conferences. *Nick v. Morgan Foods, Inc.* 99 F.Supp.2d 1056 (E.D.Mo., June 8, 2000); *affd* 270 F.3d 590 (8th Cir. 2001)(Obligations to participate in good faith in discovery extends to alternative dispute resolution proceedings).

## III. Defendants' Failure to Make Disclosure, Cooperate and Act in Good Faith

The parties in this suit mutually agreed to participate in a non-binding arbitration pursuant to the United States Court for the District of Rhode Island's alternative resolution dispute ("ADR") program at their Pre-Trial Rule 16 conference. As part of terms of this ADR proceeding, the parties also agreed to depose the Plaintiff, Defendant

Neil Saunders, and witness Jeffery Backman. After there was an exchange of discovery and the parties were deposed the arbitration was held on November 17, 2004.

Minutes before the commencement of the hearing however Defendants provided their first response to Plaintiff's Request for Production of Documents Questions 13 and 14; this timing was ninety-eight (98) days after they were initially requested. They also supplemented their first response to Question 12 submitted just five (5) days earlier. The information was accepted by the arbitrator and referred to throughout the hearing. Thereafter the arbitrator rendered a decision that was ultimately rejected by Defendants. Afterwards Plaintiff sent Defendants a Request for Admissions; their response to one of the questions contradicts their response at the hearing.

As discussed in detail below, the timing, in inaccuracy, and arbitrary nature of Defendants' below responses violate Rule 26 (e) and Defendants' obligation to act in good faith pursuant to Rule 16 (f) and the Federal Rules of Civil Procedure.

**Request No. 12:** Produce copies of any records or other documents relating to any wages paid to Plaintiff while employed by Defendant Greenwich Mortgage Corporation. Include in your response any records regarding weeks in which Plaintiff was not paid any compensation and also records regarding any overtime compensation for workweeks in which Plaintiff worked more than forty hours.

**Response No. 12:** None other than those already produced.

Plaintiff requested this information to ascertain the number of weeks in which Plaintiff did not receive a paycheck and the length of the pay periods for the purposes of possible minimum wage and overtime claims pursuant to his FLSA and RIMWA claims.

Defendants did provide, what Plaintiff believed at the time was all the information relative to their response to these questions. This included their payroll register information from 2000-2003; and "Final Figure," and "Worksheet" forms from loans that Plaintiff received commissions. Plaintiff's counsel went through these documents and determined Plaintiff was not paid wages on numerous workweeks and included the information into his statement for damages submitted to the arbitrator in the parties' non-binding arbitration.

However, just prior to the arbitration on November 17, 2004, and five (5) days after the foregoing response, Defendants supplemented their response with copies of several company checks paid to Plaintiff that were not processed through the company's payroll. Along with this information, Defendants provided an excel spreadsheet that listed the number of pay periods per year for the years 2001 through 2003, the date of the checks in the payroll period, the amount of the check, and whether or not the check was a company or payroll check. A copy of Defendants' excel sheet is attached hereto as Exhibit 1.[1]

Besides the fact that Plaintiff's counsel made his submission to the arbitrator based on Defendant's initial response, the timing of this supplemental response is suspicious, particularly when the information included checks from as far back as 2001. The information was also incomplete, contradictory, and inaccurate. The excel spreadsheet omitted information from the nine (9) months Plaintiff was employed in 2000; it listed many different payroll check dates different from those of their computer generated payroll records; and, contained several checks listed as "company checks" that were contrary to the payroll information previously provided.

<u>**Request No. 13:**</u> Produce copies of any records or other documents relating to loans to Joseph Feeney, Andrew McGary, Alfia Pimpinella, Michael Croft, Samuel Eaton, Todd Harrison, Kathleen Smith, and Cosmo Ciccariello. Include in your response any internal memoranda to any employees of the Defendants, including any owners or officers, regarding the status of any compensation that may or may not be paid to any employee or owner.

<u>**Response No. 13:**</u> Documents to be produced just prior to arbitration.

Plaintiff made the foregoing requests in order to ascertain who did the work on these loans and therefore earned the commissions.

a. **Documents Produced**

While Plaintiff's counsel was aware of Defendants' foregoing response, he did interpret that to mean *just* "prior to arbitration." Accordingly, he was surprised Defendants produced what was represented to be a complete response to the foregoing requests. These documents were accepted as an exhibit in the arbitration and referred to throughout the proceeding. A list of the documents provided for each loan is attached hereto as Exhibit 2.

Included in this response were 3" x 3" post-it notes attached to several of the loans that do not appear to be taken in the ordinary course of business; in fact they appear

[1] Local rules limit the number of pages for exhibits on this motion to five (5); therefore, much of the referenced material is not included with this motion. *See*, U.S.D.C. of R.I. Amended General Order #2002-01. Plaintiff's counsel will, however, have all referred material available for the Court's review at the motion.

to be written just for their submission. Moreover, at the arbitration, Defendant Saunders did not know who authored the comments. The specific loans and comments on these post-it notes are as follows:

| Loan | Comments |
|---|---|
| Joseph Feeney | "Loan done … after Paul left" |
| Michael and Jean Croft | "appraisal done loan after underwritten after [Plaintiff's] termination" |
| Kathleen Smith | "u/w [underwritten] run date 6/5 for approval Paul already gone" |
| Samuel Eaton | "underwriting done after termination" |
| Andrew McGary | "complete file redone" |

As Defendant Neil Saunders would later admit, Defendants did not produce all the documents requested on these loans they have in their possession and are required to keep records of as a matter of law.[2] In fact, Plaintiff only received a sliver of what he asked for. Compounding this egregious conduct was the fact that there was no consistency to the documents that Defendants actually produced.

**b. Documents Not Produced**

Due the foregoing circumstances, Plaintiff deposed Defendant Neil Saunders a second time after the arbitration.

---

[2] Every company licensed pursuant to R.I.G.L. § 19-14-1 et seq.:

> must document and maintain a record of all actions taken, from original point of contact (i.e. solicitation calls, application, filing, etc.) to the final disposition of each financing request received, and shall maintain at a minimum, the following records:… In each customer file folder…a copy of the following documents:
>
> i) The loan application.
> ii) The loan note.
> iii) Settlement Sheet.
> iv) All required Regulation Z and Real Estate Settlement Procedures Act Disclosures.
> v) Title waiver forms pursuant to R.I. Gen. Laws §§ 19-9-5 &19-9-6.
> vi) Adverse action, where applicable.
> vii) Signed rate lock agreements, where applicable, with lender rate lock confirmation.
> viii) Copies of mortgage documents containing fee disclosures required by statute.

Date the application was considered complete for purposes of Federal Regulation B….[and] A loan log which contains, at a minimum, the name of the applicant, the date the application was received, the date the application was approved, withdrawn or denied, and the date the loan closed….The documents must be kept for a minimum of three (3) years from the application date. DBR § 98-14-5 (d).

In his subsequent deposition Defendant Saunders outlined in detail all the documentation involved in selling and processing loans. He informed Plaintiff's counsel that there were numerous documents involved in selling a loan his company is involved in. This included the loan application, credit report, appraisal and title orders, documentation to verify the client's income, correspondence to the underwriter, intra-company loan "processing reports" that track and monitor the loans, truth and lending and good faith estimates forms for non-conforming loans, and final figure sheets. *See*, May 20, 2005 Deposition of Defendant Neil Saunders at p. 56-68. He also acknowledged that Defendants have an internal tracking mechanism in their computer that tracks the loan's activity. *Id.* at pp. 68-69.

As the enclosed Exhibit 2 demonstrates, Plaintiff received very little of this information. Plaintiff also did not receive many of the other documents Defendants are required to maintain copies of by law. In fact, Defendants did not provide Plaintiff with one loan application for any of the loans in dispute, a form that is usually signed by the loan officer and is essential to Plaintiff in proving his claims. In fact, Defendant Saunders's comments below suggest that there are "files" of documents related to these loans that were not produced.

When asked why he failed to provide the requested documents to Plaintiff, Defendant Saunders explained through this colloquy with Plaintiff's counsel:

> Q. My question to you is, why didn't you give them [the loan documents in question] to us?
>
> A. I didn't know they were asked for. We referred to them as loan files. I think my answer is simply is I thought this is what you had asked for that had to do with pay records or something to that effect, not loan files.
>
> Q. Did you see the request for production of documents at any time from your attorney?
>
> A. Yes
>
> Q. Did you know your obligations under it?
>
> A. I thought I gave you what you asked for. The loan files would know are stacks that high. *Id.* p. 102-103.

Initially Defendant Saunders said he "didn't know they were asked for," yet he acknowledged reading and understanding the contents of the requests. He then went on to contradict himself by stating that he thought what was asked for "had to do with pay records or something to that effect, not loan files" and then totally contradicted himself by saying "I thought I gave you what you asked for." These inconsistent explanations are also inconsistent with his actions; he did in fact give Plaintiff a sliver of the requested documents just prior to the arbitration.

**<u>Request No.14:</u>** Produce copies of any records or other documentation regarding payment of wages and commissions to any employees of Defendants or any other third party regarding the loans of Joseph Feeney, Andrew McGary, Alfia Pimpinella, Michael Croft, Samuel Eaton, Todd Harrison, Kathleen Smith, and Cosmo Ciccariello.

**<u>Response No. 14:</u>** Documents to be produced just prior to arbitration.

Plaintiff made the foregoing requests in order to ascertain who was paid commissions on these loans.

Plaintiff never received the documentation related to this response, this includes "Final Figure," and "Worksheet" forms provided in Answer 12.

**<u>Request No.18.</u>** Produce copies of all correspondence and documentation by or between Defendants and Plaintiff relating to Plaintiff's participation in any and all of Defendants' employee retirement plans. The documentation should include, but not be limited to, Plaintiff's approval and information relative to how Plaintiff decided to invest contributions made to Defendant Greenwich Mortgage Corporation's retirement plan.

**<u>Response No. 18:</u>** Enclosed.

Plaintiff requested this information in order to determine if Defendants have any record of sending Plaintiff any information about his claims, including Plaintiff's request for a copy of Defendants' summary plan description ("SPD").[3] Defendants' response was partial in that it did not include this information.

In his submission to the arbitrator Plaintiff asked for damages for Defendants' failure to provide Plaintiff with a copy of Defendants' SPD. In his decision, the arbitrator specifically stated that Defendants "do not strenuously oppose the plaintiff's factual assertions regarding the ERISA claims" and as a result, awarded him $6,500 in damages plus attorney's fees. However, in a subsequent response to Plaintiff's Request for Admissions, Defendants assert that they did in fact provide the requested information to Plaintiff, yet they failed to provide a copy of the correspondence.[4] This response also contradicts their response at the arbitration.

---

[3] At the court's discretion a party could be liable for a court imposed fine, payable to plaintiff, of up to $100 per day for not providing a requesting participant a copy of his company's retirement plan SPD. See, 29 U.S.C. § 1132 (c)(1).

Since it is well established that Plaintiff mailed correspondence to Defendants on or around October 1, 2003 and then again on or around November 13, 2003, requesting this information, Defendants' damages could be significant, and in this arbitration, they ultimately were.

[4] **<u>Request for Admission Question 16.</u>** As of at least August 1, 2004, Defendants did not send to Plaintiff or his legal counsel a copy of Greenwich Mortgage Corporation's 401K Plan summary plan description.

**<u>Defendants' Response No. 16:</u>** Denied. Defendants sent a summary plan description to Plaintiff in July of 2003. After Defendants were contacted by the U.S. Department of Labor in January

## IV. Harm Caused to Plaintiff

Defendants' foregoing actions, which are without substantial justification, caused Plaintiff harm: their failure to timely produce accurate information prior to the arbitration comprised the proceeding's integrity, caused Plaintiff the cost of the arbitrator and his counsel's fees; their incomplete and arbitrary responses to requested discovery caused Plaintiff to incur the additional the costs of having to depose Defendant Saunders a second and possibility of a third time; and lastly, unless allowed by this Honorable Court, Plaintiff will be harmed by being precluded from introducing any information relative to the arbitrator's decision for Defendants' non-compliance of applicable ERISA provisions into evidence at any trial to either prove his claim or rebut any affirmative defenses of Defendants.

**WHEREFORE,** pursuant to Rules 37 (c) and 16(f) of the Rules of Federal Civil Procedure and the Court's inherent powers, Plaintiff prays this Honorable Court issue an Order with the following findings of fact and conclusions of law:

1. Defendants' initial response to Questions 13 and 14 of Plaintiff's Request for Production of Documents and their supplemental response to Question 12 were not timely, incomplete, and misleading; in bad faith and without substantial justification.

2. The initial timing and answers to questions 13 and 14 and the supplemental response to question 12 was not participating in the ADR process in good faith and gave Defendants an unfair advantage in the arbitration.

3. Defendants' forgoing actions caused Plaintiff substantial harm by causing him to incur unnecessary costs, and also deprive him an opportunity to ask Defendant Saunders important information relative to the documents not produced.

4. Defendants' responses relative to whether or not they provided Defendants with a timely copy of their SPD at the arbitration is contradictory to their response to Plaintiff's Request for Admissions Question No. 16.

5. Plaintiff prays this Honorable Court to impose the following sanctions:

---

2004, Defendants sent a second copy to Plaintiff as well as to the U.S.D.O.L. The second copy sent to Plaintiff was done at the suggestion of the Dept. of Labor.

a. Allow Plaintiff to introduce at any subsequent trial the actions of Defendants', which includes any and all exhibits and/or correspondence submitted, at their November 17, 2004 arbitration hearing;

b. Allow Plaintiff to introduce the findings of the arbitrator in any subsequent trial so that the fact finder can determine Defendants' credibility relative to their response to Request for Admissions No. 16.

c. Require Defendant Neil Saunders to be re-deposed, at his cost regarding any and all remaining issues.

d. Require Defendants to pay $7,650 to Plaintiff for the costs he incurred as a result of their conduct. A list of these costs is attached hereto as Exhibit 3. (Plaintiff is also prepared to have a full accounting of these costs at this hearing).

e. Require Defendants to put an amount of money it deems necessary into the Registry of the Court in order to pay for the costs of this hearing and of a third deposition of Defendant Neil Saunders.

PLAINTIFF,
SINAPI, FORMISANO & COMPANY, LTD.
Paul M. Kerins
By his attorneys,

Gregory A. Mancini (# 5740)
100 Midway Place, Suite 1
Cranston, RI 02920-5707
Phone: (401) 944-9690
Facsimile: (401) 943-9040

Dated: September 13, 2005

## PLAINTIFF'S EXHIBITS

**Copy of an Excel Spreadsheet Defendants' submitted to prior to Arbitration..............1**

**List of the Documents Defendants Provided in response to Plaintiff's Request for Production of Documents Question 13 ..........................................................................2**

**Costs Plaintiff has incurred due to Defendants' in the Motion ....................................3**

EXHIBIT

1

2001

| | | | |
|---|---|---|---|
| 1 | 16-Jan | 4609.14 | comp chk |
| 2 | 31-Jan | 1140.5 | payroll ck |
| 3 | 15-Feb | 2055.9 | payroll ck |
| | 28-Feb | | |
| | 15-Mar | | |
| 4 | 30-Mar | 3069.93 | payroll ck |
| 5 | 13-Apr | 1500 | comp chk |
| 6 | 20-Apr | 1514.88 | comp chk |
| 7 | 30-Apr | 3382 | payroll ck |
| 8 | 15-May | 760 | comp chk |
| 9 | 15-May | 1702.8 | payroll ck |
| 10 | 31-May | 2486.06 | payroll ck |
| 11 | 15-Jun | 2229.39 | payroll ck |
| | 29-Jun | | |
| 12 | 13-Jul | 3005.66 | payroll ck |
| 13 | 24-Jul | 701.25 | comp chk |
| | 30-Jul | | |
| 14 | 16-Aug | 1692.55 | payroll ck |
| 15 | 30-Aug | 782 | payroll ck |
| 16 | 7-Sep | 438.98 | comp chk |
| 17 | 14-Sep | 4007.77 | payroll ck |
| 18 | 25-Sep | 1101.5 | payroll ck |
| 19 | 15-Oct | 1641.42 | payroll ck |
| | 31-Oct | | |
| 20 | 15-Nov | 3640.16 | payroll ck |
| 21 | 30-Nov | 996.9 | payroll ck |
| 22 | 13-Dec | 1000 | comp chk |
| 23 | 15-Dec | 4585.35 | payroll ck |
| 24 | 26-Dec | 1515.65 | payroll ck |

2002

| | | | |
|---|---|---|---|
| 1 | 15-Jan | 886.41 | payroll ck |
| 2 | 31-Jan | 1548.7 | payroll ck |
| 3 | 13-Feb | 930.94 | payroll ck |
| 4 | 26-Feb | 1296 | payroll ck |
| | 13-Mar | | |
| 5 | 29-Mar | 1631.58 | payroll ck |
| | 11-Apr | | |
| | 30-Apr | | |
| 6 | 3-May | 275 | comp chk |
| 7 | 15-May | 2255.31 | payroll ck |
| 8 | 31-May | 1271.86 | payroll ck |
| | 14-Jun | | |
| | 28-Jun | | |
| 9 | 3-Jul | 800 | comp chk |
| | 12-Jul | | |
| 10 | 31-Jul | 1000 | comp chk |
| 11 | 31-Jul | 1599.95 | payroll ck |

| | | | |
|---|---|---|---|
| 12 | 15-Aug | 1694.81 | payroll ck |
| 13 | 30-Aug | 1650.44 | payroll ck |
| 14 | 13-Sep | 2159.66 | payroll ck |
| 15 | 26-Sep | 1451.18 | payroll ck |
| 16 | 14-Oct | 4975.6 | payroll ck |
| 17 | 22-Oct | 1071 | comp chk |
| 18 | 22-Oct | 1071 | comp chk |
| 19 | 30-Oct | 279.81 | payroll ck |
| 20 | 15-Nov | 1426.89 | payroll ck |
| 21 | 30-Nov | 1710.18 | payroll ck |
| 22 | 15-Dec | 2174.21 | payroll ck |
| 23 | 26-Dec | 1044.45 | payroll ck |

2003

| | | | |
|---|---|---|---|
| 1 | 13-Jan | 1992.54 | payroll ck |
| 2 | 29-Jan | 2705.44 | payroll ck |
| 3 | 31-Jan | 2254.04 | comp chk |
| 4 | 12-Feb | 2379.5 | payroll ck |
| 5 | 12-Feb | 2379.5 | payroll ck |
| 6 | 26-Feb | 2404.71 | payroll ck |
| 7 | 12-Mar | 2254.04 | payroll ck |
| 8 | 10-Apr | 1941.8 | payroll ck |
| 9 | 28-Apr | 1000.21 | payroll ck |
| 10 | 13-May | 1623.53 | payroll ck |
| 11 | 13-May | 1623.54 | payroll ck |
| 12 | 13-May | 1623.54 | payroll ck |
| 13 | 29-May | 2264.2 | payroll ck |
| 14 | 29-May | 2264.19 | payroll ck |
| 15 | 29-May | 2264.19 | payroll ck |

EXHIBIT
tabbies
2

DEFENDANTS' PARTIAL RESPONSE TO QUESTIONS 13 AND 14 OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PRODUCED JUST PRIOR TO ARBITRATION

| **Names of the eight loans in question** | **Feeney** | **Harrison** | **Croft** | **Smith** | **Eaton** | **McGary** | **Cicacariello** | **Phimpella** |
|---|---|---|---|---|---|---|---|---|
| **Forms Drafted by Greenwich Mortgage** | | | | | | | | |
| Un-authored Posted Note | X | | X | X | X | X | | |
| Borrower's Certification and Authorization form | | | | | | X | | |
| Good Faith Estimate form | | | | | | X | | |
| Disclosure Relating to Transfer of Loan form | | | X | | | X | | |
| Equal Credit Opportunity Act Notice form | | | X | | | X | | |
| Attorney Selection Notification | | | X | | | | | |
| Mortgage Disclosure Fee | | | X | | | | | |
| Facsimile Cover sheet | | 3 cover sheets | | | | | | |
| Correspondence | | | | | X | | | |
| **Forms/Reports Provided to Greenwich Mortgage by Third Party Lenders/Entitites** | | | | | | | | |
| Uniform Loan Application | | | | | | X | | |
| Credit Report | | | | | | X | | |
| Verification of Deposits | | | | | | X | | |
| Uniform Appraisal Report | | | X | | | X | | |
| Approval and Conditions/ Summary | X | X | | | | Page 3 only | | |
| Loan Conditions and general information | | | X | X | X | | | |
| Funding Request | | | | X | | | | |
| Settlement Statement | X | | X | X | | | | |
| Facsimile Cover sheets | | X | | | | | | |
| **TOTAL NUMBER OF DOCUMENTS PROVIDED** | **3** | **3** | **8** | **4** | **3** | **10** | **0** | **0** |

EXHIBIT
tabbles
3

**PLAINTIFF'S EXHIBIT NO. 3**

| | Non-attorney related costs | | Counsel's fees for preparation and attendance | |
|---|---|---|---|---|
| Costs related to arbitration | Item | Cost | No. of hours worked | Cost |
| Arbitration | Arbitrator | $697.50 | 25.5 | $3,825 |
| Deposition of N. Saunders (2nd) | Stenographer | $496.20 | 7.50 | $1,125 |
| Rule 37 Preparation | Research on Westlaw | $485.13 | 18.0 | $2,700 |
| **TOTALS** | | **$2,183.63** | **67**[1] | **$7,650** |

---

[1] Plaintiff's counsel has spent a considerable amount of time on the issues relating to the arbitration, and this motion; however, in the interests of judicial fairness he is only requesting compensation for these hours worked. His hourly rate of $150.00 per hour.